JASPER PHELPS V. THE STATE.

No. 15605. Delivered February 15, 1933.
Reported in 57 S. W. (2d) 130.

The opinion states the case.

*Robey & Robey*, of Eastland, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is seduction; the punishment, confinement in the penitentiary for five years.

Prosecutrix, Pearl Harris, began going with appellant in January, 1930, she being at the time 18 years of age, and appellant 20. The parties ceased keeping company in December, 1930. According to the testimony of the state, appellant went to see prosecutrix three or four times a week during the period of time mentioned. Prosecutrix testified that she had dates with no other young man during the time she was going with appellant, saying that she accompanied him to church and to parties. Further, she testified that in March, 1930, appellant asked her to marry him and she accepted his proposal. She said that in April, which was about a month after she had become engaged, appellant solicited her to have sexual intercourse with him. Touching the first act of intercourse, prosecutrix testified, in part, as follows: "Yes, we discussed the question of marriage on that occasion; he told me he would marry me. I did not let him have intercourse with me until after he said he would marry me. I would not have permitted him to have intercourse with me, or bothered me, if he hadn't promised to

marry me. * * * I relied upon his promises to carry out his agreement to marry me when I let him have intercourse with me. I did not submit to Jasper Phelps and permit him to have intercourse with me just because I wanted to have intercourse; I submitted to him because I was afraid he would not like me if I didn't; I was once in love with Jasper but I am not now."

Prosecutrix testified, further, that sometime in May she engaged in another act of intercourse with appellant, and that two or more acts of intercourse were engaged in with appellant prior to December 2, 1930. On the 27th of April, 1931, prosecutrix gave birth to a baby. According to her version, she and appellant were to marry in September, 1930, but appellant deferred the date until the 2nd day of December of the same year. In December, 1930, appellant went to the State of California, where he was later arrested. According to the testimony of prosecutrix, after becoming engaged to appellant, she made her wedding dress, canned some fruits and vegetables, and made a number of quilts. She declared that appellant was the father of the child, and affirmed that appellant was the only man with whom she had had sexual intercourse.

In an effort to corroborate prosecutrix, the state proved that she made a wedding dress, canned a quantity of fruit and vegetables, and made some quilts. Further, the state introduced the mother of prosecutrix, who testified, in part, as follows: "As to whether or not I ever had a conversation with Jasper Phelps concerning my daughter, Pearl Harris; well, he has been around the house there a lot when we would make cream. With reference to whether Jasper Phelps ever said anything to me with reference to his marrying Pearl Harris; he gave a dead give-away in the kitchen one night when he said he didn't plant no cotton to have him any quilting cotton. As to how that statement arose; I didn't know just how it started, but we were all talking, and he said he wasn't like the Drake boy for he didn't plant him no cotton patch to make any quilting cotton. I don't remember what had been said about quilting up to that time. Jasper never did ask me at any time, or talk to me personally at any time about marrying my daughter Pearl Harris. Jasper talked to my sister in my presence. As to what was said then, I just can't tell hardly what all he did say, but in substance he said that Pearl just as well work for him as work for her daddy; that is what Jasper Phelps said. He didn't say anything to me about them marrying along in September."

The only other circumstance relied upon for corroboration

is found in the fact that appellant went to the state of California in December, 1930, and that it was there that he was arrested upon the present charge.

Appellant contends that the evidence is insufficient to corroborate prosecutrix. The opinion is expressed that this contention should be sustained. To sustain a conviction for seduction, it is essential that the prosecutrix be corroborated. This is specifically declared in article 709, C. C. P., 1925. It is likewise necessary that the corroboration extend to both the promise of marriage and the act of intercourse. Slaughter v. State, 86 Texas Crim. Rep., 527, 218 S. W., 767; Barron v. State, 119 Texas Crim. Rep., 565, 46 S. W. (2d) 317. To sustain a conviction, it is essential that the corroborative evidence, whether it be circumstantial or direct, must come from some source other than the prosecutrix. It has been said: "The subsequent acts and declarations of the accomplice could not be used to corroborate her." Haney v. State, 81 Texas Crim. Rep., 651. The statement, however, is subject to the qualification that there are some acts of the prosecutrix which may be relevant as circumstances supporting the corroboration provided always that the proof of them comes from a witness other than the prosecutrix. See Ice v. State, 84 Texas Crim. Rep., 509, 208 S. W., 343; Underhill on Evidence, sec. 389; State v. Waterman, 75 Kansas, 253, 88 Pac., 1074.

The declarations imputed to appellant by the testimony of the mother of prosecutrix are not deemed sufficient to corroborate the prosecutrix' testimony to the effect that she submitted to appellant's embraces upon his unconditional promise to marry her. Nor do we believe the fact that prosecutrix prepared a wedding dress and canned some fruit and vegetables is, under the circumstances reflected by the record, corroborative of the testimony of prosecutrix touching the alleged promise of marriage. Moreover, we find nothing in the testimony which corroborates in any way prosecutrix's testimony relative to an act of sexual intercourse with appellant. On the question of corroboration, we deem the testimony no stronger than that disclosed in the opinions in Barron v. State, supra, and Ford v. State, 55 S. W. (2d) 94. In those cases it was held that the corroborating evidence was insufficient.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.